IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DEAN H. CHRISTENSEN, an individual,<br><br>                              Plaintiff,<br><br>vs.<br><br>PICEANCE WELL SERVICE, INC.,<br><br>                              Defendant. | MEMORANDUM DECISION AND<br>ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:15-CV-272 TS |

This matter is before the Court on Plaintiff Dean H. Christensen's Motion for Default Judgment, Motion to Strike, and Motion to File First Amended Complaint.  In response, Defendant Piceance Well Services, Inc.'s ("Piceance") filed a Motion to Set Aside Default Certificate and two Motions to Dismiss.  For the reasons discussed below, the Court will deny Plaintiff's Motion for Default Judgement and Motion to Strike, grant Defendant's Motion to Set Aside Default Certificate and Plaintiff's Motion to File First Amended Complaint, deny Defendant's initial Motion to Dismiss as moot, and grant the second Motion to Dismiss in part and deny it in part without prejudice.

## I.  PROCEDURAL BACKGROUND

Plaintiff filed his Complaint on April 17, 2015.  Defendant was served with the Complaint on May 12, 2015, and its answer was due on June 2, 2015.  Defendant's Chief Financial Officer, Sam W. Black, attempted to file an Answer on behalf of Defendant, but was unable to do so.  In a sworn affidavit, Black declared he was unaware it was improper for a non-attorney to file a pleading on behalf of a corporation.[1]

---

[1] Docket No. 13 ¶ 4.

Plaintiff moved for default on June 5, 2015.  The Clerk of the Court entered a Default Certificate on June 8, 2015, after which Plaintiff filed a Motion for Default Judgment.

On June 12, 2015, counsel for Defendant filed a notice of appearance.  On June 15, 2015, Defendant filed its initial Motion to Dismiss and a Motion to Set Aside Default was filed on June 22, 2015.  Plaintiff filed a Motion to Amend Complaint and First Amended Complaint on June 22, 2015.  Plaintiff also filed a Motion to Strike on the same date.  On July 6, 2015, Defendant moved to dismiss Plaintiff's Amended Complaint.

## II.  FACTUAL BACKGROUND

The following facts are taken from the Plaintiff's Amended Complaint.  Plaintiff is the owner of Federal 28-11 Well (the "Well").  Through the operator of the Well, Plaintiff retained Defendant to run rods, pump and space out the polished rod on the Well.[2]  Defendant completed the requested services on October 13, 2014.[3]  On January 12, 2015, the Well stopped pumping because the polished rod was not properly spaced, damaging the rods and tubing, as well as other property.[4]  Plaintiff's Amended Complaint asserts claims for negligence, breach of contract, and breach of warranty.

## III.  MOTIONS ON DEFAULT

Fed. R. Civ. P. 55(c) provides that "[t]he court may set aside an entry of default for good cause."[5]  "In deciding whether to set aside an entry of default, courts may consider, among other things, whether the default was willful, whether setting it aside would prejudice the adversary,

---

[2] Docket No. 14 ¶¶ 6, 7.

[3] *Id*. ¶ 9.

[4] *Id*. ¶¶ 10, 14.

[5] Fed. R. Civ. P. 55(c).

and whether a meritorious defense is presented."[6]  Default judgements are disfavored by the courts.[7]

First, the Court must consider whether the default was willful.  As set forth above, Defendant's CFO attempted to respond to the Complaint prior to the entry of the Default Certificate.  However, he could not respond on Defendant's behalf.  Upon learning of his error, he obtained counsel and within two weeks motions in response to the Complaint were submitted. There is no evidence that the default was willful.

Next, the Court must determine whether Plaintiff would be prejudiced if the default were set aside.  Plaintiff does not argue that he will be prejudiced if the default is set aside.  Indeed, Plaintiff did not respond in any substantive way to Defendant's Motion to Set Aside.

Finally, the Court must consider whether Defendant has presented a meritorious defense. Defendant argues that Plaintiff's Complaint fails to state a claim.  Based upon the filing of the Motions to Dismiss, the Court finds that Defendant has presented a potentially meritorious defense.  Therefore, the Court will grant Defendant's Motion to Set Aside and deny Plaintiff's Motion for Default Judgment.

## IV.  MOTION TO AMEND COMPLAINT

Federal Rule of Civil Procedure 15(a)(1)(B) provides that "a party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under rule 12(b)."  Plaintiff timely filed his Motion to Amend in response to Defendant's Motion to Dismiss.  Defendant has not opposed Plaintiff's Motion to Amend.  Additionally, Defendant responded to the Amended Complaint in its second Motion to Dismiss.  Therefore, the Court will

---

[6] *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009) (quotation marks omitted).

[7] *See Katzson Bros., Inc. v. EPA*, 839 F.2d 1396, 1399 (10th Cir. 1988).

grant the Motion to Amend and has considered the Amended Complaint in evaluating Defendant's second Motion to Dismiss.  As a result, Defendant's initial Motion to Dismiss is moot and will be denied as such.

## V.  MOTION TO DISMISS

Defendant moves to dismiss the Complaint.  Defendant argues the economic loss rule bars Plaintiff's negligence claim, that Plaintiff was not a party to the contract barring the breach of contract and breach of warranty claims, and that Plaintiff was not a third-party beneficiary to the agreement between Defendant and the oil well operator.  The Court will address each argument in turn.

## A.    STANDARD OF REVIEW

A party can move to have a claim dismissed under Rule 12 of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted."[8]  When evaluating the motion, the court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."[9]  Well plead allegations must contain "enough facts to state a claim to relief that is plausible on its face."[10]  Plausibility "refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."[11]  "A court should disregard conclusory allegations that lack supporting factual content."[12]  Furthermore, the Court should be mindful

---

[8] Fed. R. Civ. P. 12(b)(6).

[9] *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1178 (10th Cir. 2012).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[11] *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009).

[12] *Foerster v. Lubeck*, No. 2:14-CV-344-DB, 2014 WL 3858507, at *1 (D. Utah Aug. 5, 2014).

that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[13]

B.      NEGLIGENCE

Defendant argues that Plaintiff's negligence claim is barred by the economic loss rule. "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[14]  "The economic loss rule prevents recovery of economic damages under a theory of nonintentional tort when a contract covers the subject matter of the dispute."[15]

Economic loss is defined as:

[d]amages for inadequate value, costs of repair and replacement of the defective product, or consequential loss of profits without any claim of personal injury or damage to other property . . . as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.[16]

However, a plaintiff can recover economic losses in negligence if he can show physical damage to other property or bodily injury.[17]

"Other property" is property that is outside the scope of a contract and unaffected by the contract bargain.  When property is contemplated in the scope and subject matter of the contract the parties to the contract can only recover for damages to that property through contract remedies.  However, when property falls outside of the scope of a contract, the economic loss rule will not apply and relief may be

---

[13] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[14] *Hermansen v. Tasulis*, 48 P.3d 235, 239 (Utah 2002) (citation omitted).

[15] *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah 2012).

[16] *Id.*

[17] *See SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 28 P.3d 669, 680 (Utah 2001).

available in tort.  Under this framework, the extent to which the economic loss rule applies in any given case depends on the contract at issue and the scope of the duties and property the contract covers.[18]

In *Simantob v. Mullican Flooring, L.P.*, the plaintiff claimed defective flooring damaged the subflooring concurrently installed.  The trial court found that the plaintiff's claims were barred by the economic loss rule, but the Tenth Circuit reversed.  The Tenth Circuit found that since the subflooring was part of a separate contract, it was not under the scope of the contract for the alleged defective flooring and was, therefore, potentially "other property."[19]  Relying on the definition of other property set out in *Reighard*, the court found "that there was at least a genuine dispute of material fact as to whether the damaged subflooring qualified as 'other property.'"[20]

Plaintiff alleges that Defendant was retained to run rods, pump and to space out the polished rod on the Well.  Plaintiff alleges damages related to Defendant's alleged failure to successfully complete these tasks, but also alleges damage to other property, such as soil contamination, which is not necessarily covered by the contract.  The limited scope of the contract between the parties distinguishes it from those cases relied upon by Defendant involving integrated construction projects.  Therefore, it is plausible that Plaintiff's negligence claim is not completely barred by the economic loss rule.  Given Plaintiff's pro se status and the limited information before the Court concerning the scope of the contract, the Court declines to dismiss Plaintiff's negligence claim at this time.  As a result, the Court need not consider the parties' arguments concerning whether there was an independent duty.

---

[18] *Reighard*, 285 P.3d at 1177.

[19] *Simantob v. Mullican Flooring, L.P.*, 527 F. App'x 799, 805–06 (10th Cir. 2013).

[20] *Id*. at 807.

C.      BREACH OF CONTRACT

Defendant argues Plaintiff was not a party to the agreement under which it performed

work, barring Plaintiff's breach of contract and breach of warranty claims.  In Utah, "[o]ne who

is not a party to a contract has no right to enforce it, unless such person is an intended third-party

beneficiary of the contract, or an assignment of the contract has occurred."[21]  The Utah Supreme

Court follows Section 302 of the Restatement (Second) of Contracts to determine whether a non-

party to a contract is an intended beneficiary and entitled to enforceable rights.[22]  Section 302

provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a
> promise is an intended beneficiary if the recognition of a right to performance in
> the beneficiary is appropriate to effectuate the intention of the parties and either
> (a) The performance of the promise will satisfy an obligation of the promisee to
> pay money to the beneficiary; or
> (b) The circumstances indicate that the promisee intends to give the beneficiary
> the benefit of the promised performance.
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.[23]

"The intention of the parties is to be determined from the terms of the contract as well as

the surrounding facts and circumstances.  Also, the intent of the contracting parties to confer a

separate and distinct benefit must be clear."[24]  "A third party who benefits only incidentally from

the performance of a contract has no right to recover under that contract."[25]

---

[21] *Colo. Cas. Ins. Co. v. Perpetual Storage, Inc.*, No. 2:10-CV-316-DAK, 2011 WL 1231832, at
*2 n.2 (D. Utah Mar. 30, 2011) (citing *Shire Dev. v. Frontier Invs.,* 799 P.2d 221, 223 (Utah Ct.
App. 1990)).

[22] *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist,* 773 P.2d 1382, 1386 (Utah 1989).

[23] Restatement (Second) of Contracts § 302, at 439–40 (1981).

[24] *Simantob v. Mullican Flooring, L.P.,* No. 2:09-CV-379-DAK, 2010 WL 2486549, at *5 (D.
Utah June 15, 2010).

[25] *Broadwater v. Old Republic Sur.,* 854 P.2d 527, 537 (Utah 1993).

In his Amended Complaint, Plaintiff alleges that the operator of the Well contracted with Defendant on behalf of Plaintiff.  Defendant argues Plaintiff would only have standing "if the parties to the contract clearly express an intention to confer a separate and distinct benefit on the third party."[26]  While this is true, the Restatement allows for the examination of the surrounding facts and circumstances in determining the intentions of the parties.  Under the facts as alleged by Plaintiff, it is reasonable to expect that, as the owner of the Well, Plaintiff would receive more than incidental benefits from the service on the Well, providing him standing to sue for breach of contract.

In the alternative, Plaintiff may also have standing to sue under a principal-agent relationship with the well operator.  "An agent is one who acts on another's behalf and is subject to the other's control."[27]  "The contract of an agent is the contract of the principal, and the principal, although not named therein, may sue or be sued thereon."[28]  If the well operator was acting as Plaintiff's agent, Plaintiff would have standing to sue for breach of contract.  Here, Plaintiff has alleged the well operator contracted with the Defendant on his behalf.  This is enough to survive the dismissal at this stage.

D.     BREACH OF WARRANTY

Defendant argues Plaintiff did not allege any express or implied warranties and no implied warranty existed.  Defendant is correct that there are insufficient allegations to support either an express or implied warranty claim.  Plaintiff's breach of warranty claim is simply a

---

[26] Docket No. 18, at 6.

[27] *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) (citing Restatement (Second) of Agency § 1(1)).

[28] *Zeese v. Siegel's Estate*, 534 P.2d 85, 88 (Utah 1975).

restatement of his contract claim.  Therefore, the Court will dismiss this claim, but will do so without prejudice.

## VI.  MOTION TO STRIKE

Plaintiff seeks to strike Defendant's Motion to Dismiss based on the pending Motion for Default Judgment.  However, because the Motion for Default Judgment must be denied and the default set aside, the Court denies the Motion to Strike.

## VII.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Default Judgment (Docket No. 5) is DENIED.  It is further

ORDERED that Defendant's Motion to Dismiss (Docket No. 10) is DENIED AS MOOT. It is further

ORDERED that Defendant's Motion to Set Aside Default (Docket No. 12) is GRANTED.  It is further

ORDERED that Plaintiff's Motion to Amend (Docket No. 14) is GRANTED.  It is further

ORDERED that Plaintiff's Motion to Strike (Docket No. 15) is DENIED.  It is further

ORDERED that Defendant's Motion to Dismiss (Docket No. 18) is GRANTED IN PART AND DENIED IN PART.

DATED October 29, 2015.

BY THE COURT:

_____

TED STEWART
United States District Judge